UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MYLENE MASICLAT | No. 17 CR 452<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Mylene Masiclat was an owner of Sure Care Home Health. She and others at Sure Care paid doctors and others hundreds of thousands of dollars in kickbacks for patient referrals. The scheme went on for more than four years and involved more than 500 patients. The government recommends a sentence within the Guidelines range of 33 to 41 months' incarceration, a sentence well-supported by the 18 U.S.C. § 3553(a) factors.

**I.  Background**

This investigation stemmed from the cooperation of a doctor to whom co-defendant Zosima Victuelles paid a number of cash kickbacks. The cooperating doctor recorded Victuelles' kickback payments at the direction of the government.

The government later obtained search warrants for Sure Care's offices, and uncovered additional evidence of a longstanding kickback conspiracy. The evidence obtained during the search included a handwritten kickback log, which memorialized hundreds of kickback payments for patient referrals to doctors, marketers and Sure Care employees over the years. According to Sure Care's bookkeeper ("Bookkeeper A") who kept the kickback log, Bookkeeper A told the defendant and co-owner

Victuelles a few days after law enforcement's search of Sure Care's offices that she kept the log and that agents took it during the search. The defendant asked Bookkeeper A why Bookkeeper A kept the log and why she kept the log at Sure Care's office. Victuelles said that they were going to be in trouble because of the log.

## II. The Guidelines Range

The government agrees with the probation officer's calculation of the advisory Guideline range. The Guidelines calculations are set forth below.

| Base Offense Level (§ 2B4.1(a)) | 8 |
|---|---|
| More than $250,000 but less than $550,000 in kickbacks (§ 2B4.1(b)(1)(B)) | +12 |
| Leadership role (§ 3B1.1) | +3 |
| Acceptance of responsibility (§ 3E1.1(a)) | -3 |
| **TOTAL** | **20** |

The defendant does not have any prior convictions. With an offense level of 20 and a criminal history category is I, the advisory Guidelines range of 33 to 41 months.

## III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a Guideline Sentence.

A sentence within the advisory Guideline range of 33 to 41 months is necessary to achieve the goals of sentencing in this case.

### A. Nature and Circumstances and Seriousness of the Offense

The Anti-Kickback Statute is designed to prevent financial incentives from improperly influencing the health care decisions of physicians and other medical

2

professionals. In passing the statute, Congress's main goal was "to protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self- interest rather than cost, quality of care or necessity of services." *United States v. Hancock*, 604 F.2d 999, 1001 (7th Cir. 1979) ("The potential for increased costs to the Medicare-Medicaid system and misapplication of federal funds is plain, where payments for the exercise of such judgments are added to the legitimate costs of the transaction. . . . these are among the evils Congress sought to prevent by enacting the kickback statutes . . ."). The courts have further recognized that "kickback schemes can freeze competing suppliers from the system, can mask the possibility of government price reductions, can misdirect program funds, and, when proportional, can erect strong temptations to order more drugs and supplies than needed." *United States v. Ruttenberg*, 625 F.2d 173, 177 n.9 (7th Cir. 1980).

In this case, the defendant's kickback scheme went on for more than four years and involved hundreds of patients. The kickback log and other documents recovered during the investigation show that the defendant and her co-conspirators paid more than $450,000 in kickbacks for more than 500 patients. This was a serious, repeated offense that was more than a solitary lapse of judgment.

The scheme was also very lucrative for the defendant and her business. Claims data shows that Sure Care obtained more than $15 million in revenue from Medicare

3

between January 2010 and April 2014, which was when the kickback scheme was ongoing. As an owner of Sure Care, the defendant reaped the financial benefits of the scheme.

### B. History and Characteristics of Defendant

The defendant's role in the offense is also aggravating. As illustrated by the Grand Jury testimony of Bookkeeper A, the defendant played a leading role in this conspiracy. According to Bookkeeper A, the defendant was one of Bookkeeper A's bosses. The defendant and the other owners directed Bookkeeper A to generate numerous checks related to the payments for patient referrals. In fact, the defendant often had Bookkeeper A generate checks to Bookkeeper A in the approximate amounts of the kickbacks and then had her cash the checks, which helped conceal the scheme. The cash was then used to bribe doctors and others who referral patients to Sure Care. This scheme warped the incentives that should drive medical decisions.

### C. Deterrence

A meaningful sentence of incarceration is important here to effect general deterrence. Home health fraud has become a significant problem nationally and particularly in the Chicago area. The defendant's systemic use of kickbacks contributed to the culture of fraud within the home health industry, which costs Medicare significant amounts of money and makes it harder for legitimate home health agencies to conduct their business and treat their patients.

Further, defendant is the type of defendant who committed the exact type of crime where general deterrence matters. This was not a crime of need or passion. Crimes of this nature can be deterred with punishment that includes meaningful terms of incarceration. Other would-be defendants who are thinking about committing abusing Medicare will think twice if they believe their actions will have serious consequences. These consequences cannot simply be disgorgement of ill-gotten gains or the payment of fines. Instead, the consequences must include meaningful sentences of incarceration to be effective in deterring others.

## IV. Conclusion

For the reasons stated herein, the government seeks a Guidelines sentence within the advisory Guideline range of 33 to 41 months.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Matthew F. Madden
MATTHEW F. MADDEN
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60606