IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | N0. 17 CR 452-2 |
| MYLENE MASICLAT, | ) | |
| | ) | Judge Robert W. Gettleman |
| Defendant. | ) | |

## **DEFENDANT MYLENE MASICLAT'S SENTENCING MEMORANDUM**

Defendant Mylene Masiclat, by her attorney, Phillip A. Turner, respectfully submits the following as her sentencing memorandum in this matter so that an appropriate sentence considering Title 18 United States Code, Section 3553(a) is imposed.

Mylene Masiclat has plead guilty one count of the indictment. She acknowledges that she was involved in a scheme to get patients for a home health company, Sure Care Home Health Corporation (hereinafter "the company"), which consisted of money being given to doctors to get patients. Mylene Masiclat understands that the law in the United States of America is that if you have any knowing involvement in such a scheme, you are guilty of the scheme. It does not matter how minor your role may have been in the

scheme. Mylene Masiclat in contrast to the other defendants in this case is not a medical professional. She is not a nurse or a doctor. She has a degree from a university in the Philippines in medical technology and has worked in laboratories doing scientific testing.

She got involved in this company because she and her husband were basically social friends with the family members of the other defendants. She was doing office work at the company. She and husband hoped that if they invested time and money in the company that they would make a profit on that investment. Mylene Masiclat did not have any involvement in the patient care and she had no contact with patients or doctors. She was a signatory on the checking account which required two signatures. She signed checks which she knew would be chased and the cash used to pay doctors for patients. She never gave cash to doctors or other medical personnel in exchange for sending the company patients. The presentence investigation report in paragraph 11, states "the defendant paid $15,000 to defendant Khan on October 26, 2012, $3,200 to Individual D on May 31, 2013, and $3,600 to Individual D on September 27, 2013." Mylene Masiclat did not pay these individuals. Others paid these individuals, however, Mylene Masiclat knew that checks she had signed were cashed and the money was paid to doctors to

obtain patients. She knew that it was wrong and illegal to involve herself in this type of activity in any manner.

The Court can see that other than this situation, Mylene Masiclat has lived an exemplary life. She has been a productive and law-abiding citizen. She rose from very humble origins and has taken care of her family and others who needed help in the Philippines. Attached are letters from individuals and family members attesting to the fact that she is a good person. In addition, as the Presentence Investigation Report (hereinafter "PSR") makes clear, she has taken care of her family and been an excellent mother to her children. She would implore this Court to look at the totality of her life in determining what should be her punishment in this case.

As this Court is aware, in **United States v. Booker,** 543 U.S. 220 (2005), the United States Supreme Court held that the mandatory application of the United States Sentencing Guidelines was unconstitutional and that the guidelines were advisory. The guidelines are only part of the analysis pursuant to Title 18 United States Code, Section 3553(a) which directs a sentencing court to impose a sentence which is "sufficient, but not greater than necessary." In addition, the Seventh Circuit Court of Appeals has remarked that the departure methodology is obsolete in light of **Booker**. See, **United States v. Laufle,** 433 F.3d 981, 986 (7th Cir. 2006). The Seventh Circuit has

expanded upon the analysis which is to be undertaken in applying the Section 3553 factors. In **United States v. Warner**, 792 F.3d 847 (7th Cir. 2015), the Seventh Circuit of Appeals reviewed the propriety of a sentence of probation for an extremely wealthy man who had by fraudulent means evaded $5.6 million in United States taxes by hiding approximately $107 million in taxable income in secret Swiss bank accounts. The existence of the Swiss bank accounts and the funds contained in those accounts were hidden from the United States Department of Treasury, Internal Revenue Service. In addition to hiding the money, defendant Warner instructed his Swiss bankers not to send him any correspondence and to destroy all the account records after five years. When the United States government concluded an agreement with one of the Swiss banks which would have revealed defendant Warner's secret Swiss account, he transferred the funds to another Swiss bank and used a Liechtenstein shell entity to hide his ownership of the funds. Warner carried on this tax evasion scheme for approximately 12 years. When the United States Department of Justice began an investigation years later to investigate and prosecute this type of offshore tax evasion, a grand jury subpoena was served on Warner for the records of his offshore banking records. Warner resisted and fought the grand jury subpoena; however, he was ultimately ordered by the courts to comply. **In re Special Feb. 2011-1 Grand Jury**

**Subpoena Dates Sept. 12, 2011**, 691 F.3d 903, 909 (7th Cir. 2012), cert. denied, 133 S. Ct. 2338 (2013). Obviously, defendant Warner was very wealthy and had a privileged life with no explanation for his criminal conduct other than insatiable greed. Despite Warner's long term premeditated and egregious conduct, the government filed only a one-count felony information charging Warner with willful tax evasion in violation of 26 U.S.C. Section 7201. Defendant Warner had no prior convictions and the resulting guidelines calculations yielded an advisory guideline range of 46 to 57 months imprisonment. At sentencing, the district court was appraised of the charitable causes to which defendant Warner had given money. The district court sentenced defendant Warner to two years' probation with community service and a fine of $100,000.00. The government appealed to the Seventh Circuit Court of Appeals arguing that the sentence was too lenient, and that defendant Warner should have been incarcerated. The Seventh Circuit Court of Appeals rejected the government's arguments and affirmed the sentence of probation. In the course of affirming the sentence of probation, the Seventh Circuit Court of Appeals engaged in an analysis of the significance of the sentencing guidelines and the sentencing factors set forth in Title 18 United States Code Section 3553. The Seventh Circuit initially noted that the crimes to which the defendant pled guilty did not expressly require the district court to send the

defendant to prison. The Court of Appeals went on to state that in reviewing the Section 3553 factors "[a]fter **United States v. Booker**, however, the guidelines are merely advisory. 543 U.S. 220, 245 (2005)." The appellate court citing **Rita v. United States**, 551 U.S. 338, 351 (2007) and **Gall v. United States**, 552 U.S. 338, 351 (2007) indicated that the guidelines are to be considered, but not to be given much weight. "The open-endedness of the section 3553(a) factors leaves ample room for the court's discretion." Thus, the district court's imposition of a sentence of probation in the case of defendant Warner when all factors pointed to a sentence of incarceration was a proper exercise of the district court's discretion. In addition, **Gall v. United States**, 552 U.S. 38, 48 (2007) recognized that probation represents a substantial restriction on an individual's liberty. The Court recounted that probationers cannot move, change jobs, associate freely and generally do not enjoy complete freedom.

Mylene Masiclat will never be involved in any criminal offense again. In addition, Mylene Masiclat is now a felon. No matter what punishment this Court imposes, Mylene Masiclat will be punished for the remainder of her life

with the collateral consequences of being a felon. She will probably lose her job when her employer does an updated background review.

Obviously, Mylene Masiclat does not want to go to prison. She will not re-offend, and the facts of her situation are unique. She is not trying to depreciate the seriousness of this offense and her role in the offense. She acknowledges that it is very serious and that she should not have had any part in it. A sentence of probation with the restrictions and collateral consequences of the felony conviction for her specific role in this offense will be more than sufficient to send a message to anyone contemplating engaging in the conduct in which Mylene Masiclat engaged. In addition, the felony conviction for Mylene Masiclat will be substantial punishment for the remainder of her life. A prison sentence will not benefit anyone. [1]

This is Mylene Masiclat's first offense. A sentence of probation would not be unreasonable. This case has had a profound effect on Mylene Masiclat. She is sorry for everything which has happened. She is embarrassed and terrified.

---

[1] Although not stated in the presentence report, Mylene Masiclat was designated on documents filed with the Internal Revenue Service when the company came into existence as the company officer responsible for the payroll taxes, the Internal Revenue Service is sending her correspondence indicating that she is responsible for the $160,000.00 in payroll taxes owed by the company.

7

In consideration of all the circumstances of this case and balancing the factors set forth in Title 18 United States Code Section 3553, Mylene Masiclat would respectfully request that a sentence of probation be imposed.

        Respectfully submitted,
        Phillip A. Turner_____
        Phillip A. Turner
        Attorney for defendant
        20 North Clark Street
        Suite 3300
        Chicago, Illinois 60602
        312-899-0009

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that in accordance with Fed.R.Civ.P.5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the following document:

**DEFENDANT MYLENE MASICLAT'S SENTENCING MEMORANDUM**

was served pursuant to the district court's ECF system as to ECF filers.

                Respectfully submitted,

                Phillip A. Turner_____
                Phillip A. Turner
                Attorney for defendant
                20 North Clark Street
                Suite 3300
                Chicago, Illinois 60602
                312-899-0009